Alright, our next case for this morning is United States v. Derrick Johnson. Please fight. Thank you. And may it please the court. Derrick Johnson had a 924C trial that was stripped down to the furtherance element. There was no question that he possessed a firearm when he was arrested. And there was no question that he also possessed five hydrocodone pills that he intended to sell. So the whole trial was about the relationship, if any, between the gun and those five pills. This appeal raises several issues that all relate to the need for a nexus between the firearm and the drug offense in a 924C case under the furtherance prong. The jury instruction allowed the jury to convict without finding a nexus. It started with the pattern language. The firearm had to advance, move forward, promote, or facilitate the drug offense. But then it said that the jury could find this advancement, could find this furtherance, through the Castillo factors, regardless of whether the firearm made the offense possible, easier to commit, or more likely to succeed. The final sentence of the instruction, though, it says you can consider all these things, so consider away. But then it finally says you're to be guided primarily by common sense in deciding if, and then quote, the firearm furthered, advanced, moved forward, or facilitated the crime. So that pulls it together for the jury. It's hard for me to see how a sensible person wouldn't realize that they're being asked to make that decision about the furtherance part of the statute. I hate the word prong, but the furtherance section of the statute. Well, I mean, the jury obviously didn't think this was a particularly easy case. Although there was only one element they were discussing, they deliberated for several hours. They asked about the instructions. And the concern here is really that, so the dictionary definition that was pulled out of this other case is essentially synonymous with the pattern language. You know, advanced, move forward, facilitate, possible, easier to commit, more likely to succeed. And so by calling that a factor, it just led to confusion about what is it. And it's a long list of evidence. And you should consider whether the firearm makes the crime possible, easier to commit, or more likely to succeed. So you want them to be considering that, right? Sure, sure. I mean, the problem is really in... Well, did they question this particular instruction? In other words, you said the jury questioned some of the instructions. Was this one of the instructions? No, they asked about reasonable doubt. So they were apparently having trouble... Not this instruction. You know, with the ultimate question. Did the District Court orally iterate that inference was an element? Well, certainly he instructed them on the inference element. The concern here is that the whole purpose of the factors, the idea that we think about different things is that... The problem I have is how you structure this instruction in general is really overcome by what Judge Wood said the last sentence was. We do this, or it's done all the time with instructions, of adding things, putting things in there. The structure, just because it's in a particular place in the instruction, doesn't really control. Well, Your Honor, I can move on to my next issue. The concern there is that the instruction allowed the jury to find the inference element, potentially using factors without finding those factors furthered. But the next issue is the expert. And while the jury instructions, we are arguing, eliminated the need for the jury to find a nexus, the government's expert essentially said that you don't need to find a nexus because there's always a nexus, essentially eliminating the notion of furtherance from the statute. It was all sort of confusing, but in a factual way. And the district court failed to comply with Daubert when it allowed this testimony to come in without making any assessment of its reliability. I don't see how there's a Rule 702 problem here, at least as we've understood this to be. Now, there's discussion about possibly tightening up the idea of lay experts, but people like Agent Alto are frequently involved in drug cases. And as the judge said, they testify about norms in the industry, so to speak. And one of the norms in the industry, according to Agent Alto's experience, which everybody agreed he had lots of, is that guns are very common because this is an illegal business. And you don't just call the police and say, hey, I have a problem. Somebody just stole my drug stash. So it's experiential expertise. And Agent Alto says, boy, in the cases I've seen, if they're drugs, they're guns. And if they're guns, they're drugs. Words to that effect. I agree with you that in this world today where everybody can pack, and I guess they all are in Wisconsin, maybe you shouldn't draw an inference from holding a gun. But the government has the job of showing the nexus. They've got to show the drug dealing. They've got to show the gun. And I don't see why Agent Alto isn't a good, you know, here's this gun in this guy's pocket. It's a particular small kind of weapon. It's loaded. There are bullets in the chambers. He says they're linked. He doesn't say they're linked. He says it's common in the industry for that link to exist. But he certainly goes beyond it's common in the industry to the idea that there are two reasons that someone who's dealing drugs would have a gun, and that includes someone who is dealing five hydrocodone pills at a university bar in Madison, Wisconsin, and that's to protect your stash, to protect your drug money, or to rob other dealers. But Mr. Johnson never suggested that there was any other reason. He didn't say, boy, was I happy when Heller was decided, and now I can, you know, in McDonald's, and now I can have my gun with me at all times. Because I feel safer. It is not Mr. Johnson's burden to explain why he has a gun, and unfortunately the cases in referring to antique rifles and hunting rifles, they sort of put the burden, well, I shouldn't go that far, but it means that the defendant needs to show what else is this gun for. Well, these days and age, people have guns for all sorts of reasons, and it's the government's job to show what this does. Did this man have a license to have the gun? He was not a felon. I don't think he had a concealed carry license. All right, so, you know, if he had a license, that would certainly be an argument, but I gather not. Was Alto cross-examined to bring out the bases of his opinions? He was cross-examined to try to sort of pull him back from those opinions, and he qualified them all. My question is, was he cross-examined to find out the bases of his opinions? He gets on the stand and says, guns and drugs go together. Presumably he has some reason for believing that. Was there cross-examination to find out what that reason is? Right? Look, let me tell you, and I hope Mr. Stephen is listening, too. One thing he might say is, well, I was told that in a seminar. Right? Law enforcement officers always say things like, training and experience. Well, what was the experience, and is the training anything more than an urban legend? Right? One could find that out on cross-examination, and then if it turned out that Alto was just talking off the top of his head, you'd have a very good appellate position, because maybe there are some people who know the relation between drugs and guns, and Alto wasn't among them. But it doesn't sound like the cross-examination explored that issue. Well, that was the gatekeeping job of the district court. At the point it was at trial, the district court had said, as a matter of law, his qualifications entitle him. You also need to show prejudice. And if there was no cross-examination, was there an offer of proof about what you think the cross-examination of Alto would have shown? The defense motion was for Alto. The answer is yes or no. Was there an offer of proof? Oh, no. Okay. Thank you. No, the defense motion was for the district court to examine the basis for his opinions, and the district court said it didn't. The government made a proffer with regard to his qualifications and so forth, didn't it? That's correct. And we're conceding that he is a qualified expert. The concern is reliability, the basis for his opinion, and this is not a challenge to this sort of testimony as a general matter in most cases. But I have a hard time seeing how it could be limited, because it is actually such common testimony in these drug cases. And, of course, maybe it's true, maybe it isn't. Maybe some drug dealers like going around with poison darts or something, but it's very common. And for the government presented evidence saying, you know, Bureau of Justice statistics show that here are the number of drug prosecutions we had and guns were involved in X percentage of them, that might be interesting. There's actually social science data about that, which neither science brief discusses. It's about 50%. Of the 50%, the guns are used in a very small percentage. It's not at all clear that somebody who gets on the stand and says, well, I think drugs and guns are always associated, knows what he's talking about. That is correct, Your Honor. But it wasn't made clear in this record whether Alto knows what he's talking about. And your brief, you not only didn't cross-examine him or make an offer of proof, your brief doesn't point to any of the social science evidence. How is one to find prejudice here? Well, unfortunately, there isn't social science evidence for the 50% of gun-carrying drug sellers. What is the purpose of their carrying? Yes, you want to know how the guns are used when they're used. Are they used to ward off somebody who's going to steal the drugs? Or are they used to shoot their spouses or for target practice? Or are they purchased to impress their friends? It would be nice to know that, but there's no record was made here, and there are no data referred to in the appellate brief. So how does one say prejudice has been established? Well, in the end, what we have is this very general testimony combined with the fact that he has five hydrocodone pills for sale and a firearm. So in addition to these evidentiary and jury instructions issue, we also make a sufficiency argument. Sufficiency arguments have, of course, been raised in other 924C cases, but this is really the frontier. This is less evidence than this court, at least in any case that this court has decided on a sufficiency claim. It's less evidence. A non-felon selling a handful of pills on a pleasant evening in Madison, Wisconsin, in front of a university bar. So the question is, what is the meaning of... Nobody carries weapons unauthorized there? I'm sorry, what's your question? Nobody carries concealed weapons not authorized? I'm sure there are plenty of people carrying concealed weapons not authorized throughout Madison, Wisconsin and, unfortunately, everywhere else. But the word... But not all of them are drug dealers, is your point. Quite a few of them are probably just people who want a gun with them. Correct, and people who happen to be selling a small amount of drugs with no significant cash may be holding a gun for the same reasons as anyone else. And so what is the meaning of the word furtherance? That is one reason, and that is the reason the government proffered here, but they didn't present specific evidence of this gun acting as protection in this case. And I'll reserve some time for rebuttal. All right, thank you, Ms. Bight. Mr. Stephen. Good morning. May it please the Court. My name is Corey Stephan, and I represent the United States in this matter. The instruction in this case, when taken as a whole, is legally accurate and is not confusing. Duran factors... It's very wordy. I mean, it goes on forever. Why should we be giving, why should district judges be giving any instructions about this? I mean, the more factors you list, the more a jury is likely to say, well, I don't know, the judge gave us 14 factors. Eight of them point one direction, six of them point the other. Eight is bigger than six. What a terrible way to decide the question. And you're exactly right, Judge. There is no need to actually define in furtherance beyond that. But you asked the judge to define at quite long length. Correct. So why aren't you saying, as we've said about reasonable doubt, just clam up, use normal English words like in furtherance of, and then let the jury figure out something? Well, the government in this case elected to follow this circuit's adoption of the Duran factors and thought that that would be helpful. And in this case, the defense was allowed the option of getting all eight of the Duran factors or striking two of them that were not relevant. And they elected to have those stricken. But as it pertains to the dictionary definition, I agree with the discussion that you had with Ms. Veith, that really what this jury instruction does is it gives the dictionary definition that the defense requested, and that is actually superfluous, as we've just discussed. And that's the problem. You just open the door for confusion in that situation. If you really think the members of the jury are limited enough in their English language capability that they don't know what in furtherance of means, maybe you have a bigger problem. I mean, I imagine this is not beyond the vocabulary of your average Madison, Wisconsin juror. You remember it's Madison, Wisconsin hour. Well, that's right. So they're even better, right? Yeah. Might be beyond the capacity of people from Indiana, but surely not people from Madison. That's right. So whether that means that this is reversible error is a whole different question. But it doesn't need to be. Let's move on to Mr. Alto. What was the basis for him? Before I ask you what was the basis for Alto's testimony, I want to tell you what my problem is. What the district judge said is lots of agents testify about this question, so I'm not going to even ask whether there's a basis for Alto testifying about this question. And try to apply that to some other area of knowledge. The judge might say, well, lots of people testify that the defendant's fingerprints are on the saran wrap. Therefore, I'm not going to ask whether this guy knows beans about fingerprints. Anybody can testify about fingerprints. Or lots of people testify about DNA. So anybody can testify about DNA. Is that sound? It's not sound as you suggest. It's absurd, right? So the proposition, lots of people know about X and testify about X. Therefore, everybody can testify about X is simply a non sequitur. And that's the problem I have with the district judge's conclusion. He said lots of people can testify about X. Therefore, Alto can testify about X. And I don't see how that follows. And I think in this case, I think that the district court did, in fact, look deeper than that. This came to light in a Daubert request. They asked for a Daubert hearing. Daubert no longer exists. It was set aside by an amendment to Rule 702 quite some time ago. Maybe we should be talking about Rule 702. Well, and in this case, I think that the judge did consider. He asked for the specific proffer. He got the proffer from the government as to what Agent Alto would testify. But the question is the basis of his knowledge was clear what he was going to say. Go back to my fingerprint example. It's clear that the person is going to say, I found the defendant's fingerprint on the saran wrap around the brick of cocaine. But whether the person has an adequate basis for doing that would be the question. And what seems to have happened here is the judge found out what Alto was going to say but didn't find out whether Alto had a basis for saying it. I think that the district court did look at Special Agent Alto's extensive experience. And this is an experiential case. But it's experience, I guess, in what? So does Alto say, you know, I've been doing this for 10 years and I've done a study of the number of drug cases I've had and guns were involved in this many cases and there was a real furtherance thing? We're in a weird world, by the way, right now with respect to guns. But if it's just kind of gestalt, you know, Alto says, well, it feels like there were usually drugs and guns together. Hard to know what weight to put on that. You know, if he actually has studied his own experience or if he's investigated literature or somehow done something to back up the percentage. He backs off. He says, well, maybe it's not always, but it's almost always. But what is he basing it on? What does he do? He's basing it on his interactions with defendants, suspects that he's arrested, time he spent, 17 plus years. So just his memory. Gee, throwing my memory back over the last 12 years, it seems like drugs and guns were always associated or very frequently. Well, he did, what, 20 years with drug investigations? Extensive. Essentially his entire law enforcement career has been touching on drugs, investigating drugs. He worked as an undercover officer for 10 plus years. He's arrested people. He's interviewed suspects. And in this case, his experience is really similar to some of the other cases that this court has looked at in allowing this type of evidence. And the four that were cited are relevant in this case is Allen, Blount, Eller, and Tingle. So he's on par with what those other officer and agent experts are testifying to. And he did have an opportunity, the defense did have an opportunity to cross-examine him. And he did back off the one statement where there's drugs, there's guns. He got rid of always and toned it down to often or frequently or something. Correct. But he didn't ever testify to the ultimate issue in this case. He didn't testify about Derek Johnson's state of mind. So the evidence that came in through him is very, very narrowly tailored. As it relates to the sufficiency, the evidence at trial was more than sufficient to allow a reasonable juror to convict in this case. And I compared in my brief to the Huddleston case, we have at least as many factors, if not more. The gun was easily accessible in Johnson's pocket. It was a small semi-automatic that was easily concealed. It was loaded, one in the chamber, full magazine. It was in close proximity to the drugs. The gun was in the front pocket of his jacket. So the NRA recommends that we should all go around with loaded guns because you never know when a synagogue may be attacked or when a nightclub may be attacked or a school. And if we don't all have loaded guns, then people will be hurt. Well, in this case, the concern is somebody who's dealing drugs. But what do you do with that? Maybe half the people at that Madison bar had loaded guns because they were heeding the message that we all have to protect ourselves. Well, if half the people had guns at the bar... Well, they got Madison, but... Well, if half the people at the bar had guns, they were probably... It would be 100% if it were anywhere else. Here's the empirical question. In order to figure out whether guns are associated with drugs, you need to look at searches of people who are found with guns and without drugs. If there's a very small number of people in that box, then you might infer that when somebody is found with a gun and with drugs, that the two are associated. But if there's a very large number of people who are found with guns and without drugs, saying, well, this person had a gun, therefore it was to help drugs, becomes a much tougher inference. It would be very interesting to know whether ALTO has any data about how many people are found with guns and no drugs or how many people are found with drugs and no guns. And those questions were never asked, of course. That was not an inquiry in this case. It certainly will be an interesting question. Nor was it offered by the prosecution in support of ALTO's testimony because, of course, the district court refused to hold a hearing. Well, I think the district court was relying upon his extensive experience, the other cases that have come up. As I say, that's like saying because a lot of people testify about fingerprints, anybody can testify about fingerprints. We don't learn whether ALTO had any genuine knowledge or whether he's just watched TV shows and finds on TV shows these are associated. On TV shows, the bad guys fire 163 shots and James Bond is never hit. In the real world, things happen differently. And I think that Special Agent ALTO did offer some of his real-world assessments, but we did not get into the empirical data. I concede that. But the evidence at trial was certainly sufficient to establish the defendant's guilt. I went over some of the factors. There's more. It's in my brief. But I also think that the Daubert framework was correctly applied. I think that the district court correctly exercised its discretion in finding the testimony reliable and relevant. So for those reasons, I would ask that you affirm the judgment of conviction and unless this court has any other questions, I would stand upon my brief. Thank you. All right. Thank you. Anything further, Ms. Fite? Thank you, Your Honor. Under Rule 702, it is the proponent of expert evidence that's required to show the basis for the knowledge. And here, the district court did not require the government to make that sort of showing. It made this really per se ruling that this sort of evidence is reliable. It is admissible. And the effect of the evidence is similar to the effect of the other errors in this case, and even of the sufficiency issue, which is that it was essentially concurrent carrying is furtherance. If you have drugs for sale and you have a gun, then you are guilty of the furtherance element. But, you know, there's another prong of 924C that covers carrying, and furtherance means something. And I don't think the expert should have been permitted to essentially How would you show furtherance? Well, the case is show furtherance in a lot of different ways. So, I mean, the theory is almost always protection. But showing that they would use it for protection goes to where did this gun come from? Where did they put it in for what purpose? What did people see them using the gun for? What's the dangerousness of the situation they're dealing in? What sort of drugs are they dealing? In most cases, we're dealing with serious quantities of serious drugs. Like I said, this case is really And how many times was it found not to be in furtherance? Never, Your Honor. It's not a good track record for defense attorneys. But, again, this is the frontier in terms of the facts of this case. Thank you. Thank you. Thank you very much, Ms. Veit. Thanks as well to Mr. Steffen. We will take the case under advisement.